UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF MEDICAL CORPORATION H&S, <br><br> Applicant. | Case No.  20-mc-80117-VKD <br><br> **ORDER RE EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 USC 1782** <br><br> Re: Dkt. No. 1 |

Applicant Medical Corporation H&S ("MCHS") has filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for documents on Google LLC ("Google").  Dkt. Nos. 1-6.  Although the proposed subpoena is directed to Google, MCHS will use the subpoena to obtain identifying and contact information for a person or persons in Japan who control two Google accounts.

The Court grants in part and denies in part the application as discussed below.

## I.      BACKGROUND

According to the application, MCHS operates a dental clinic in Nagoya, Japan.  Dkt. No. 1 at 2.  In February and March 2020, two negative, one-star reviews were posted on the Google Map review page associated with the dental clinic through two different Google accounts.  *Id.*  The reviews (as translated in MCHS's application) state:

> Display name : kim-kim
>
> They will see you on time for your appointment. The receptionist is also kind, polite, and pleasant.  However, to be honest, you should be very careful to the director of the hospital.  He seems to be friendly to one who has money and not friendly to who doesn't (and pass it over to others) . . . I don't recommend the insurance-covered

United States District Court
Northern District of California

treatment.  If you ask too many questions, he will be angry.  Then, he will say to the staff "Explain the rest".  Staffs changes so often, and explaining of the treatment 1s difficult to understand and hard to listen to . . .

The director takes his time with the treatment, and his skill is probably good, but you have to be prepared for it because he is not patient-oriented.  However, the appointments are always full, so the other doctors may be good.

I cannot recommend this to anyone.

Display name : angel heart

I was surprised at the difference in their attitudes towards patients who have insured treatment versus who have fee-for-service treatment.  Even the treatment room was different, and I gave up the treatment because it feels so bad.

Dkt. No. 2, Ex. B.  MCHS characterizes these reviews as having "offensive comments."  Dkt. No. 1 at 2.

MCHS says it intends to assert claims for defamation and unlawful business interference in Japan against the person or persons who control the accounts that posted the reviews once MCHS ascertains their identities.  *Id.*  MCHS seeks permission to serve a subpoena on Google seeking the following documents, which it says will allow it to identify the account holders:

1. All DOCUMENTS identifying the user(s) of ALL ACCOUNTS from the date each Google Account was created to the present, including all names, addresses (including postal codes), e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers.

2. All DOCUMENTS showing all names and addresses (including postal codes) of credit card holders registered on ALL ACCOUNTS.

3. All DOCUMENTS showing access log (including dates, times, IP addresses, and access type) of ALL ACCOUNTS from the date the foregoing account was created the present, including access log for each login (namely, login history).

Dkt. No. 6 at 6–7.

MCHS's application is supported by the declarations of Yuichi Nakazawa and Ken Doyama, both of whom are attorneys representing MCHS, and Aiko Reynolds, who provided translations of the challenged reviews.  Dkt. Nos. 2-4.

2

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege.  28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47 (2004).  The statute may be invoked where: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person."  *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted.  *Id.* at 264.  In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264–65.

A district court's discretion is guided by the twin aims of § 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to U.S. courts.  *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004).  The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding.  *See Intel*, 542 U.S. at 247, 261–63.

Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an ex parte

basis, since "'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (quoting *In re Republic of Ecuador*, No. C10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010)). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

Unless the district court orders otherwise, the discovery the court authorizes must be obtained in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994).

## III.   DISCUSSION

### A.   Statutory Requirements

MCHS's application satisfies the statutory requirements of 28 U.S.C. § 1782(a). First, the subpoena seeks discovery from Google, which has its principal place of business in this district. Second, MCHS requests this discovery for use in a civil action for defamation and unlawful business interference that it says it anticipates filing in Japan as soon as it learns the identities of the Google account holders responsible for the negative review postings. Crediting that assertion, this proceeding before a foreign tribunal appears to be within reasonable contemplation. *See Intel*, 542 U.S. at 259 (adjudicative proceedings need not be pending or imminent, so long as they are within reasonable contemplation). Third, MCHS, as the putative plaintiff in the contemplated civil action, is an interested person within the meaning of the statute.

### B.   *Intel* Factors

Even if the Court has the authority to grant MCHS's § 1782 application, that does not mean the Court is required to do so. *Intel*, 542 U.S. at 247. In determining whether judicial assistance under § 1782 is appropriate, the Court must consider the additional *Intel* factors.

United States District Court
Northern District of California

### 1.     Participation of target in the foreign proceeding

Although this factor addresses whether the person from whom discovery is sought is a party to the foreign proceeding, "the key issue is whether the material is obtainable through the foreign proceeding." *In re Varian Med. Sys.*, 2016 WL 1161568, at *3 (internal quotations and citation omitted).

According to the application, Google will not be a party to the civil action MCHS plans to bring in Japan, and the documents MCHS seeks by subpoena are located in the United States. Dkt. No. 1 at 4. MCHS contends that such evidence is outside the reach of a Japanese court's jurisdiction. *Id.* In these circumstances, the need for assistance pursuant to § 1782(a) is greater than it would be in circumstances where the foreign tribunal may order parties appearing before it or third parties within its jurisdiction to produce evidence. *Intel*, 542 U.S. at 264. The Court finds that this factor weighs in favor of authorizing service of the subpoena.

### 2.     Receptivity of foreign tribunal to U.S. judicial assistance

Under this factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4. "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *Id.* (internal quotations and citation omitted). Courts have denied requests for discovery where the foreign tribunal or government expressly says it does not want the U.S. federal court's assistance under § 1782. *See, e.g.*, *Schmitz*, 376 F.3d at 84–85 (affirming the denial of discovery where the German government expressly objected to the information sought due to concerns that it would jeopardize an ongoing German criminal investigation, as well as German sovereign rights); *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040–41 (N.D. Cal. 2016) (concluding that this *Intel* factor weighed heavily against discovery where the Korean Fair Trade Commission filed an amicus brief stating that it had no need or use for the requested discovery).

United States District Court
Northern District of California

Here, MCHS represents that Japanese courts have been receptive in other matters to assistance in discovery from the United States.  *See* Dkt. No. 1 at 5.  However, none of those cases concerned Japanese courts' receptivity to discovery of the personal identifying information of individuals posting anonymous online reviews.  In *Marubeni Am. Corp. v. LBA Y.K.*, the Second Circuit merely observed that "there is no evidence in the record of what discovery would be available in, or is acceptable to, the Japanese District Court in Tokyo."  335 Fed. App'x. 335 F. App'x 95, 97–98 (2d Cir. 2009).  In *In re Ex Parte LG Elecs. Deutschland GmbH*, the discovery at issue concerned documents reflecting the transfer of intellectual property rights between private parties, not the personal identifying information of account holders.  No. 12CV1197-LAB MDD, 2012 WL 1836283, at *1 (S.D. Cal. May 21, 2012).

Mr. Nakagawa, an attorney for MCHS who is licensed to practice in Japan, asserts that he is aware of no restrictions or policies under Japanese law that would limit the gathering of the evidence MCHS seeks here.  Dkt. No. 4 ¶ 9.  In the absence of evidence that Japanese courts would object to MCHS's discovery of the information sought in the subpoena, or that they object more generally to the judicial assistance of U.S. federal courts, the Court concludes that this factor weighs in favor of authorizing service of the subpoena.

### 3.    Circumvention of proof-gathering restrictions

Under this factor, the Court considers whether MCHS's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  "'A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'"  *In re Varian Med. Sys.*, 2014 WL 1161568, at *5 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)).  Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions."  *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal., Dec. 15, 2014); *see also In re Eurasian Natural Resources Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal., Mar. 30, 2018) (finding that the third *Intel* factor weighed in favor of discovery

1  where there was "no evidence" of an attempt to circumvent foreign proof-gathering restrictions or

2  policies).

3       MCHS relies on the declaration of Mr. Nakagawa, who, as noted above, asserts that he is

4  aware of no restrictions or policies under Japanese law that would limit the gathering of the

5  evidence MCHS seeks here.  Dkt. No. 4 ¶ 9.  In the absence of contrary information regarding the

6  procedures acceptable to a Japanese court for identifying the Google account holders, the Court

7  concludes that this factor also weighs in favor of authorizing service of the subpoena.

### 4.      Unduly burdensome or intrusive discovery

9       Under this factor, the Court considers whether the discovery is sought is "unduly intrusive

10  or burdensome."  *Intel*, 542 U.S. at 265.

11      MCHS's proposed subpoena to Google includes the three requests for documents

12  reproduced above.  These requests seek information identifying the person or persons who control

13  two Google accounts, including the entire login histories or access logs available for each of those

14  accounts.  MCHS relies on the declaration of Mr. Doyama, an attorney for MCHS who is licensed

15  to practice in Japan and California, to explain why MCHS is unlikely to be able to identify the

16  account holders from the contact information Google maintains about them, and why, in MCHS's

17  view, it is necessary to also obtain the account holders' access log information.  Dkt. No. 3.  First,

18  MCHS asserts that "it is highly unlikely that [the account holders] have provided their true name

19  and address to Google."  Dkt. No. 1 at 6; Dkt. No. 3 ¶ 7.  MCHS contends that once it has

20  obtained the access log information from Google, it can identify the IP addresses the account

21  holders used, and then it will be able to ask the Internet service provider(s) who assigned those

22  addresses for information identifying the user of the IP address.  Dkt. No. 1 at 6; Dkt. No. 3 ¶¶ 5-

23  8.

24      It is not clear to the Court whether MCHS's assertion about the unavailability of the

25  account holders' true names and contact information is based on speculation or actual information

26  about the frequency with which account holders supply fictitious information to Google.

27  However, if the Court credits this assertion, MCHS has made some showing that it may not be

28  able to obtain the identifying information it requires to proceed with a civil action in Japan unless

United States District Court
Northern District of California

United States District Court
Northern District of California

1   it obtains at least some access log information for each account holder.  This discovery certainly

2   intrudes upon the privacy interests of the Google account holders.  Moreover, the Court questions

3   whether the procedures typically available for addressing and resolving challenges to a subpoena

4   served pursuant an ex parte application adequately protect the interests of the account holders

5   here.  As a practical matter, an individual in Japan may not be able to easily invoke the available

6   U.S. judicial processes to object to the proposed subpoena, and it is not clear whether or to what

7   extent Google may act to protect the privacy interests of its account holders.[1]

8        The Court is satisfied that its concerns can be addressed by limiting the scope of MCHS's

9   third document request.  The Court will permit discovery of access log information dating back to

10  February 1, 2020 for each account; MCHS may not seek all access log information from the date

11  the account was created.  In addition, the Court will adopt additional procedural protections to

12  ensure that any objections an account holder may have to disclosure of his or her information are

13  addressed by the Court before disclosure is made.  Specifically, and as set forth below, Google

14  must notify the Court of any objections it receives from an account holder, and it may not disclose

15  objected-to documents to MCHS until the Court resolves those objections.

16  **IV.    CONCLUSION**

17        MCHS's application meets the statutory criteria for an order authorizing service of the

18  proposed subpoena.  In addition, the factors that inform the Court's exercise of its discretion under

19  *Intel* favor authorizing service of the subpoena as modified in accordance with the Court's

20  instructions above with respect to the third document request.

21        Accordingly, the Court authorizes service of a modified subpoena on Google.  This order

22  does not foreclose a motion to quash or further modify the subpoena by Google following service

23

24  _____

25  [1] MCHS cites to Google's privacy policy, which suggests that Google will consider whether a
    request from a *government agency* asks for "too much information," and that, if it does, Google
    will "try to narrow it" or may "object to producing any information at all."  Dkt. No. 1 at 8.  The
26  Court is not aware of any occasion on which Google has objected to or sought to narrow the scope
    of a subpoena for user information served by a *private party* pursuant to a successful § 1782
27  application, and the Court's own experience suggests that Google does not ordinarily take such
    steps.  *See, e.g.*, *In re Med. Corp. H&S*, No. 19-MC-80186-VKD, 2019 WL 3945003, at *1 (N.D.
28  Cal. Aug. 21, 2019) (noting that the Court invited Google to participate in a hearing concerning a
    § 1782 application and to submit a written explanation of its views, but that Google did neither).

or by the Google account holders or account users whose identifying information is sought.  The Court orders MCHS and Google to comply with the following requirements to ensure all interested persons have an opportunity to contest the subpoena if they wish:

1.   At the time of service of the subpoena, MCHS must also serve a copy of this order on Google.

2.   Within 10 calendar days of service of the subpoena and this order, Google shall notify each of the account holders and account users within the scope of the subpoena that their identifying information is sought by MCHS, and shall serve a copy of this order on each such person.

3.   Google and/or any person whose identifying information is sought may, within 21 days from the date of the notice, file a motion in this Court contesting the subpoena (including a motion to quash or modify the subpoena).

4.   Alternatively, any person whose identifying information is sought may, within 21 days from the date of the notice, advise Google in writing of any objections he or she has to disclosure of the information and the bases for any such objections.  Within 10 days of receipt of any such objections, Google shall so advise the Court.

5.   If any person contests the subpoena or objects to any portion of it, Google shall preserve, but not disclose, the information sought by the subpoena pending resolution of that contest or objection.

6.   Any information MCHS obtains pursuant to the subpoena may be used only for purposes of the anticipated action for defamation or unlawful business interference, and MCHS may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: September 14, 2020



VIRGINIA K. DEMARCHI
United States Magistrate Judge